UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

       Plaintiff,

v.

KROGER COMPANY OF MICHIGAN,

       Defendant.

_____/

Case No. 14-13757

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
DAVID R. GRAND

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [20] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [21]**

Plaintiff Equal Employment Opportunity Commission (EEOC) has brought this disability discrimination case on behalf of Jarydith Mannella, a former employee of Defendant Kroger Company of Michigan. Plaintiff filed a Motion for Partial Summary Judgment [Dkt. #20] on July 9, 2015. The same day, Defendant filed its own Motion for Summary Judgment [21].[1] The parties filed Responses [25, 26] on August 3, 2015. Defendant filed its Reply [27] on August 13, 2015, while Plaintiff filed its Reply [30] on August 20, 2015. The Court held a hearing

---

[1] Defendant filed a Motion to Amend/Correct Motion for Summary Judgment [22] the next day. That motion is **GRANTED**.

on the motions on January 8, 2015. At the conclusion of the hearing, the Court took the motions under advisement and held a settlement conference with counsel for both parties. The Court held a follow-up settlement conference on January 21, 2016. The Court has since received a request from counsel to decide the motions, given a breakdown in settlement negotiations.

For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment [20] and Defendant's Motion for Summary Judgment [21] are **DENIED**.

#### FACTUAL BACKGROUND

In June 2009, Jarydith Mannella started working for Defendant Kroger Company of Michigan as a grocery clerk. In June 2010, she suffered a serious on-the-job back injury. Defendant granted her request for a leave of absence. She was on leave for more than two years, during which time she had two back surgeries. In September 2012, her doctor concluded that she could return to work with certain restrictions. She provided her doctor's written opinion to Defendant. The manager of Manella's store, Rick Kane, let her return to work in a part-time cashier position.

Tenniqua Hayes, a total rewards manager for Defendant, told Edward Rushlow, an operations manager, to conduct an "interactive process" with Manella to determine whether, and how, her work restrictions could be accommodated. Rushlow met with her on November 6, 2012. He did not observe her working. He

interviewed her about her ability to work as a grocery clerk (her former position) and as a cashier (her then-current position). He showed her Defendant's written description of the cashier job, which included a description of essential functions and a separate description of physical demands. Manella said she was capable of performing all of the essential functions, but not capable of performing some of the physical demands. Her responses were marked on the written job description.

Rushlow forwarded the responses to Hayes after the interview. Hayes spoke with Rushlow on the phone. Relying only on Rushlow's notes, her conversation with him, and her experience, Hayes decided to terminate Manella. She wrote a termination letter stating the following:

> It is our understanding that you have been on light duty work due to an injury or illness [that occurred] on or about 09/12/12. Since that time you have returned to work, with reasonable accommodations.
> It is also our understanding that a company representative has been working with you in an attempt to find … reasonable accommodations that would allow you to perform the essential functions of an available position …. Unfortunately, the search for such positions was not successful and there is no reasonable accommodation that would allow you to perform the essential functions of an available position.
> Therefore, based upon the foregoing, this is to advise you that you are being administratively terminated from employment.

On December 4, 2012, an HR rep called Manella into a manager's office, informed her of her termination, and read Hayes' letter aloud. Manella subsequently filed an EEOC complaint, resulting in the EEOC bringing this suit.

## ANALYSIS

Defendant assumes, without formally conceding, that Manella is "disabled" within the meaning of the Americans with Disabilities Act (ADA). Disability discrimination in violation of the ADA includes "the failure to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer's business." *Keith v. County of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013) (citing 42 U.S.C. § 12112(b)(5)). Once a plaintiff shows that she is disabled and otherwise qualified for a position, with or without reasonable accommodation, the burden shifts to the defendant to show an undue hardship imposed by accommodating the plaintiff. *Id.* (citing *Kiphart v. Saturn Corp.*, 251 F.3d 573, 581 (6th Cir. 2001)). "Otherwise qualified" means capable of performing the position's "essential functions." *Id.* at 925 (citing 42 U.S.C. § 12111(8)).

The dispute in this case boils down to (1) whether Manella was capable of performing the essential functions of the cashier position she was fired from and, if not, (2) whether accommodations to make her capable, such as using hand scanners instead of lifting items or working only in the self-scanning area, would have been reasonable. "Whether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment." *Id.* at 926 (citing *Kiphart*, 251 F.3d at 585). Whether an accommodation is

reasonable is also generally a question of fact. *Id.* at 927 (citing *Haschmann v. Time Warner Ent. Co., L.P.*, 151 F.3d 591, 601 (7th Cir. 1998)).

Defendant argues that there is no genuine issue of material fact because Manella conceded that she was incapable of performing some of the "physical demands" identified on the written job description. An employer's written job description is a factor to be considered in determining whether functions are essential. *Keith*, 703 F.3d at 925 (citing 29 C.F.R. § 1630.2(n)(3)). However, it is only one factor in a factual inquiry. Further, the factor is entitled to less weight given that the job description listed the "physical demands" separately from its list of "essential functions." The description and Manella's responses are also ambiguous in ways requiring interpretation (i.e., factfinding). For instance, the description identifies "twisting" as a physical demand of the job, and Manella said she cannot do it—but it is unclear what "twisting" means, why cashiers need to do it, and whether Manella could use other means, such as turning her whole body, to accomplish the tasks other cashiers accomplish through "twisting." Further, the annotated job description indicates that Manella is incapable of "reaching," which it identifies as necessary for removing merchandise from a cart, yet also indicates that she is capable of removing merchandise from inside a cart—an apparent contradiction that renders it less reliable. Ultimately, the Court concludes that Manella's concessions about her physical limitations preclude summary judgment

in her favor, but are insufficient to support summary judgment in Defendant's favor.

The Court also concludes that there remains a genuine dispute regarding whether Defendant could reasonably accommodate Manella by letting her occasionally ask other employees for assistance with lifting. In a declaration executed by Rushlow, the manager who interviewed Manella, he claims that Manella occasionally asked other employees for such assistance. Defendant relies on this allegation, pointing out that the ADA does not require an employer to shift essential functions from one employee onto others. The ADA does, however, require an employer "to restructure the marginal functions of a job as a reasonable accommodation." *Keith*, 703 F.3d at 927 (quoting *Holbrook v. City of Alpharetta*, 911 F. Supp. 1524, 1542 (N.D. Ga. 1995)). In light of this requirement, the *Keith* court held that even though a deaf lifeguard's disability imposed extra duties on other lifeguards, "such as following through with certain patron inquiries or first aid needs," the shift in duties did not entitle the deaf lifeguard's employer to summary judgment. *Id.* The *Keith* court also acknowledged that it was unreasonable to expect an auto mechanic's employer to require other employees to perform as much as twenty percent of the auto mechanic's lifting duties. *Id.* at 928 (citing *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 632–33 (6th Cir. 1999)). However, the *Keith* court emphasized "the extent of reallocation" of duties in the

auto mechanic case. *Id.* Here, even if Manella required occasional assistance with her lifting duties, the extent of the assistance she required is unclear—particularly since it may have been reduced with greater use of hand scanners or more shifts in the self-scanning area. Whether Manella was capable of performing the job's essential lifting functions with reasonable accommodations is a question for the jury.

As noted above, summary judgment is generally inappropriate on issues of whether job functions are essential and accommodations are reasonable. *See Keith*, 703 F.3d at 926–27. The evidence here is not so overwhelmingly favorable to either side to overcome this rule. Thus, the Court denies both parties' motions for summary judgment.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment [20] and Defendant's Motion for Summary Judgment [21] are **DENIED**.

**SO ORDERED**.

                                              s/Arthur J. Tarnow
                                              Arthur J. Tarnow
Dated: March 4, 2016             Senior United States District Judge